FILED
U.S. DISTRICT COURT

2014 JAN 27 ⊃ 2: 00

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Thomas M. Burton (USB 00518)(CSB035856)
P.O. Box 1619
Salt Lake City, Utah 84110
(801) 918-1656
thomasburtonlaw@aol.com

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TERRI AND DAVID MYERS, individuals for and on behalf of themselves and as guardians ad litem for SM, a minor. | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| DR. PHIL ORGANIZATION; BAIN CAPITAL; CRC HEALTH GROUP; ASPEN EDUCATION GROUP; ISLAND VIEW ACADEMY; RYAN MORTENSON; and DOES I through X, inclusive, Defendants | ) ) ) ) ) ) |
| _____/ | |

Case No.

COMPLAINT FOR PERSONAL INJURY;
FALSE IMPRISONMENT: BREACH OF
FIDUCIARY DUTY; CONSPIRACY AND
FRAUDULENT CONCEALMENT; and
ACTUAL AND CONSTRUCTIVE FRAUD;
and DEPRIVATION OF
CONSTITUTIONAL RIGHT TO
FREEDOM;

Case: 1:14cv00007
Assigned To : Pead, Dustin B.
Assign. Date : 1/27/2014
Description: Myers et al v. Dr. Phil
Organization

Come now the plaintiffs, Terry Myers, David Myers, and SM, who allege as

follows:

1

## NATURE OF THE CASE

1. This case charges Philip McGraw, Ph.D. (Dr. Phil), a vaunted television psychologist, for soliciting and exploiting the David and Terri Myers family whose suffering 15 year old daughter was caught soliciting sex on the internet. This sensational news attracted Dr. Phil because it fit the show's traditional format.

2. Being primarily interested in his show's ratings, Dr. Phil concealed from the family his having little personal interest in their daughter's plight. Plaintiffs' ignorance of his true motives allowed Dr. Phil to induced them to submit to his brand of blunt ridicule for their not being more vigilant. He thus proceeded to condemn Terri Myers for not knowing where her daughter was and berating the daughter for seeking sex on the Internet.

3. He charged Terri Myers of failing her daughter by "a country mile" and the daughter of total naiveté in thinking that her Internet contacts might be having emotional problems just as she was. Dr. Phil's psychological remedy was to offer free treatment for the daughter at Island View, a Utah punitive behavior modification lock-down facility. Dr. Phil, however, knew or should have known, that any placement at Island View would subject SM to such a demented regimen that she would be at risk of her problems' being exacerbated.

2

4. Dr. Phil never addressed the trauma this young woman had already suffered by having the 19-year old that she and an equally young female friend had just had sex with, shot to death in front of them by a the molester's friend, a jealous teen-aged male. Dr. Phil thus ignored the causes of SM's trauma and then exacerbated that trauma by paying Island View to lock her up far from home in a private prison. At Island View, mindless guards mangled her arm, causing severe and irreparable orthopedic and neurological damage.

5. Dr. Phil has shown himself to be a showman more interested in ratings than a psychologist devoted to healing. Dr. Phil, on information and belief, was paid either in money or notoriety, or both, for endorsing not only Island View, but also a raft of CRC compounds just as abusive.

6. Compounds like Island View market themselves as boarding schools, academies, therapeutic treatment centers, ranches, or wilderness experience designed to straighten out truant or failing teens. Their failures to do so are endemic and epidemic. They leave a trail of posttraumatic stress and nightmares. Their extravagant fees suggest great expertise and cloak minimal credentials.

7. SM was thrust into Island View without the slightest understanding of what she was getting into, and had no choice in the matter. For Dr. Phil,

3

she represented one in a string of damaged teenagers that he boasted

helping, accompanied by his psychological opinions that such tough love

was just the treatment they needed.  There was no forum for complaint,

explanation, appeal, or grievance against the placement, before, during, or

after it occurred.  The only option was to bear it, for Island View, like all

other such places was locked and closely guarded.

8.  Once confined, no contact with the outside world was allowed and Sierra

knew that any disparaging remark or complaint about the prison would be

punished by isolation and losing all privileges earned, meaning making the

teenager start at the bottom anew to rise from level to level by successfully

completing mindless tasks of blind obedience enforced by cruel

punishment.

### JURISDICTION AND VENUE

9.  This action arises under the Thirteenth and Fourteenth Amendments to

the Constitution of the United States, Title 28 of the United States Code,

§§ 1332, and Articles 1 and 7 to the Utah Constitution.   This court has

jurisdiction of this cause under and by virtue of Title 28 of the United States Code, §§ 1331, diversity of citizenship.

**PARTIES**

10. Plaintiffs are all citizens of the State of Missouri. David and Terri Myers are the guardians ad litem of their daughter, SM, a minor, who is also a citizen of Missouri.

11. The Dr. Phil Organization is a group of organizations that are citizen of California.

12. Bain Capital is an asset management and financial services company based in Boston, Massachusetts and is a citizen of Massachusetts.

13. CRC Health Group is the largest provider of specialized behavioral health care services in the United States and is headquartered in Cupertino, California.

14. Aspen Education Group was acquired by Bain Capital for $300 million. Bain bought it because in 2005, the *New York Times* reported that analysts estimated that companies like Aspen had profits between 10 and 20 percent of their revenues. It is a citizen of California.

15. Island View Academy is a Utah licensed residential treatment center owned by Aspen Education Group and is a citizen of the State of Utah.

16. Ryan Mortensen is a math teacher employed by Island View Academy and a citizen of the State of Utah.

17. Doe defendants I through X are persons presently unknown regarding their activity and responsibility for failing to secure SM's health, safety, and welfare against the injury that occurred. They will be added to the complaint when their identity or responsibility are ascertained. In all things herein alleged and at all times material, all defendants were acting as agents of, or joint venturers with, the other defendants. They are all citizens of States other than the State of Utah

## FACTS

18. David and Terri Myers reported their 15 year-old daughter, SM, missing when she did not return home. She was with a 15 year-old female friend, both having consensual sex with an adult male when another man arrived and killed in front of them the individual with whom they had been involved. SM, in response to having had sex under age amounting to rape, started seeking for sex on line with older men. This bizarre and dangerous behavior deeply concerned the parents, who thereafter enter a year of therapy provided by the State of Missouri. Much of what the therapist recommended did not seem appropriate, proper, or helpful, and they decided to seek professional help from Dr. Philip McGraw, known to them by his syndicated television show.

19. The Dr. Phil staff then invited the Myers family onto the Dr. Phil show that aired on February 23, 2013. Dr. Phil berated the mother on the show

6

for not knowing what her daughter was doing and berated SM for pursuing

sex on line. He further recommended and offered to pay for behavior

modification for SM at Island View Academy in Layton, Utah. Although

licensed as a therapeutic residential treatment center, it was in reality a

private prison that locked up SM for the purpose of forcing her to become

obedient instead of truant by depriving her of freedom, privacy, education,

and subjecting her to involuntary servitude, and unjust unusual

punishments. In spite of seeking profession help from Dr. Phil, he had no

empathy for SM, just condemnation of her parents for not exercising more

control, and contempt for SM's bizarre and dangerous conduct. To

compound SM's risk of injury, Dr. Phil gave her the gift of Island View

Academy.

20. Island View offered no sophisticated psychological analysis, evaluation,

and treatment, but just punishment for underlying and untreated

psychological problems. Part of the punishment was pushing SM around

and forcing certain behaviors upon her.

21. When a math teacher, Ryan Mortensen, told her to stay after school, she

refused and went to her room. He then came after her and ordered her to

an isolation room for time out. She refused that too in emphatic and

obscene language and told him to leave her alone. He then pulled her off

her bed, and called for help from three others to enforce his command. In

7

the melee that ensued, there was a loud "pop" that stopped everyone in his tracks.  SM's right (dominant) arm was badly and perhaps irreparably broken, and its main nerve severely damaged.  Given the rapes and murder she had been through, the last thing any untrained male should have done was to assault her.

## CLAIM ONE

### (False Imprisonment)

22. Defendants falsely imprisoned SM without any legitimate purpose, and solely for their profit and benefit.

23. The acts to which SM was subject included the following:

    a. She was intentionally separated from her parents against their respective wills, and without authority of judicial review.

    b. By not permitting direct contact with one or both parents on a regular basis.

    c. By refusing to consider SM's views in matters affecting her.

    d. By not allowing SM freedom of expression by arbitrarily interfering with her privacy.

e. By subjecting SM to forms of physical and mental violence, injury and abuse, neglect or negligent treatment, and maltreatment.

f. By failing to identify, report, investigate, and follow up on Island View's maltreatment of SM.

g. By failing to provide adequate and special assistance to SM, who had emotional disabilities due to Island View's perverse treatment that was perpetrated by other and various forms of abusive maltreatment.

h. By failing to provide the highest attainable standards of health and facilities for SM's treatment and rehabilitation.

i. By failing to ensure provisions for necessary medical assistance and health care for SM.

j. By failing to provide nutritious food.

k. By failing to assure periodic reviews of the care being provided to SM.

l. By failing to recognize SM's right to an education, regarding which SM was deprived while at Island View.

m. By failing to assure that the education given at Island View conformed to the minimum standards laid down by the standards of the

State of Utah.

n. By failing to recognize SM's right to rest and leisure, to engage in play and recreational activities appropriate to her age, and to participate freely in cultural life, which, as a captive, she could not do.

o. By exploiting SM by requiring her to work at mindless chores that interfered with her education or were harmful to her physical health and mental, spiritual, moral and social development.

p. By subjecting SM to torture or other cruel, inhumane, or degrading treatment or punishment.

q. By depriving SM of her liberty unlawfully and arbitrarily.

r. By depriving SM of the right to maintain contact with her family, to correspondence and visits.

s. By failing to create an environment, which fostered SM's health, self-respect and dignity.

t. By failing to take appropriate measures to promote SM's physical and psychological recovery and social re-integration.

u. By deliberately wrenching her right arm so as to cause permanent physical and neurological damage.

v. By directly and indirectly compelling SM to confess guilt, even to things she had not done, in order to satisfy her captors' demands and escape their taunting.

w. By failing to respect SM's privacy at all stages of her confinement.

24. Defendants perpetrated a breach of their duty toward SM and intentionally caused SM's damages.

25. The Defendants are jointly and individually liable for the neglect described.

WHEREFORE, Plaintiffs are entitled to judgment herein.

## CLAIM TWO

### (Negligence - Personal Injury)

26. Plaintiffs incorporate by reference all previous allegations above stated.

27. In addition to allegations of neglect, as described hereafter, the Island View acted in breach of its duty to provide a safe, nurturing, fair, clean, competent, facility and staff to help SM heal from psychological and

emotional maladies troubling her.

28. Defendants negligently selected and placed offending directors, teachers, supervisors, and staff in positions of trust, confidence and authority and in direct, unsupervised contact with SM, when they either had no knowledge of the directors, teachers, supervisors, and staff's backgrounds or had actual or apparent knowledge of these individuals' dangerous propensities toward physical, emotional, mental, and sexual abuse of their students.

Defendants failed to establish written and effective guidelines and procedures to safeguard SM.

29. Defendants failed to provide proper training to their directors, teachers, supervisors, and staff.

30. Defendants encouraged, through their pattern and practice, the herein described acts of wrongful and illegal conduct by staff and employees.

31. Defendants failed to warn the Myers of the offending directors, teachers, supervisors, and staff's dangerous propensities to abuse teenagers entrusted to their care.  Indeed, it was their pattern and practice to encourage abusive

behavior toward SM, thus causing added mental and emotional distress.

32. Defendants were under a duty to disclose the extent of the problem of

physical, emotional, mental, and gender abuse by the directors, teachers,

supervisors, and staff towards minors such as SM, and the severe

psychological problems that would result from such abuse if not properly

treated, but failed to make such disclosures, causing the minors in their

charge mental and emotional distress.

33. Defendants failed to notify state and governmental authorities of known

and suspected abuse when they were required by law they do so.

34. Defendants were, given their absolute control over SM, to provide

reasonable instruction to and supervision of their teachers, supervisors,

and staff in order to provide a safe environment. Due to neglecting to do

so, a gang of four staff so severely wrenched SM's right arm as to have

permanently maimed both bones and nerves.

35. Defendants failed to provide nutritious food, clothing, shelter, and

education, even though they represented to the Myers that they were doing

13

so, to the detriment of SM's well being.

36. Defendants were negligent in adopting and implementing programs, regimens, and tactics specifically designed to induce anger, helplessness, and worthlessness in SM and other inmates, much to their mental and emotional distress.

37. Defendants were negligent in their policy to have minors who had advanced in the program to higher levels sometimes appointed to indoctrinate, berate, or spy and report on new or less advanced minors, and Defendants knew and encouraged advanced level minors to psychologically, physically, and verbally abuse lower level minors, much to their mental and emotional distress.

WHEREFORE, Plaintiffs pray for judgment as hereafter stated.

## CLAIM THREE

### (Breach of Fiduciary Duty)

38. Plaintiffs incorporate herein all prior paragraphs and state:

39. Because of its complete control over SM, Island View owed her the highest duty of trust and confidence and was required to act in her best interest.

40. Island View's actions and inactions, described herein, in view of the high degree of control having been given by her parents, including full and complete custody over her, violated that relationship when they failed to act with the highest degree of trust and confidence to protect SM from physical, emotional and mental abuse.

41. SM, locked up at Island View, and disciplined severely for any minor infraction of mindless rules, was unable to care for or make decisions for herself, and, being entrusted to Island View's care as a virtual prisoner, was owed a fiduciary duty.

42. By failing to take steps to prevent, detect, and minimize the harm from a round of daily abuse, Island View breached its fiduciary duty to SM.

WHEREFORE, Plaintiffs pray for judgment as hereafter stated.

## CLAIM FOUR

(Conspiracy and Fraudulent Concealment)

43. Plaintiffs incorporate herein all prior paragraphs and state that Defendants:

44. Fraudulently concealed the fact that Island View engaged in a pattern and

15

practice of forcing SM to work several hours per day for the duration of her

attendance without any compensation whatsoever.

45. Suppressed and minimized public knowledge of the rampant physical,

emotional, mental, and gender abuse of SM by teachers, supervisors, and

staff, and planned to take a uniform position and approach of denial as to

the handling of reports of abuse.

46. Island View and its staff and employees fraudulently concealed by their

web site, endorsements, and other means the fact that they have

committed acts of negligence, gross negligence, misrepresentations, fraud

and the other wrongful conduct described herein, and have engaged in

concerted action to commit such wrongful acts.

47. In the absence of this concealment, public authorities, the media, and

others would have issued general and specific warnings to the parents of

children enrolled at Island View.

48. Had Island View not practiced concealment, and a proper warning been

issued, the physical, emotional, mental, and sexual abuse would never

16

have continued. Moreover, the theft of the value of SM's work, deprivation

of her educational opportunities, and permanent damage to her future

earning capacity, would not have occurred had a proper warning been

issued. Thus, Defendants' actions in furtherance of this conspiracy to

conceal are a proximate cause of the injury and damages herein.

49. As a part of their conspiracy to conceal the physical, mental, emotional,

and sexual abuse of children by the offending teachers, supervisors, and

staff, as well as the theft of the value of SM's work and her opportunity to

receive even a minimally sufficient education, Defendants jointly followed

a practice of refusing to stamp out suspected abuse despite actual notice

and knowledge of the risk.

50. Defendants jointly concealed and failed aggressively to address abuse

issues by such actions as failing to promulgate proper and effective policies

for the appointment and training of teachers, supervisors, and staff.

51. The purpose of this conspiracy was to prevent criminal prosecution, avoid

adverse publicity, prevent claims for damages by the numerous child

17

victims and their parents, and to avoid exposure of this conspiracy
designed to conceal the claims arising from the conduct of these teachers,
supervisors, and staff.

52. Further, Defendants, in furtherance of the overall conspiracy engaged in
affirmative acts to conceal acts of fraud, breach of fiduciary duty,
negligence, and gross negligence.

WHEREFORE, Plaintiffs pray for judgment as hereafter stated

## CLAIM FIVE

### (Actual and Constructive Fraud)

53. Plaintiffs incorporate by reference all of the above stated allegations and
state:

54. As fiduciaries of SM, Defendants, individually and collectively, owed a
duty to SM, her parents, and the viewing public of Dr. Phil's television
program that touted its providing Island View to Plaintiffs, to inform them
all of the following facts:

(a) Island View was staffed by unqualified individuals;

(b) Island View did not contain sufficient staffing to prevent, detect, and minimize the effects of incidents of abuse;

(c) SM was being used for child labor;

(d) Island View was below child safety standards that would reasonably be anticipated;

(e) SM's education would be minimal to non-existent;

(f)  SM would not receive high school diplomas or transferrable credits; and

(g) SM would be harmed by the methods used to discipline her.

55. None of the above disclosures was made to SM, her parents, or the television viewing public.

56.  Because the stated adverse facts were true, relevant, and the Myers relied on the absence of the adverse facts, the Defendants had a duty to disclose these conditions.

57.  By reason of the failure to make these disclosures to SM and her parents, and their resulting detrimental reliance thereon, Defendants, individually collectively, are guilty of actual and

constructive fraud. The misrepresentations, and misrepresentations by silence were made to SM and her parents from the beginning by phone conversations both before and throughout SM's period of time at Island View.

58. These repeated intentional misrepresentations made by Defendants to SM and her parents were done in order to induce them to place and maintain SM at Island View.

59. Defendants lied to SM's parents in promotional and marketing materials which represented Island View to be a safe and secure environment, where SM would be well cared for, and provided a good education, medical care, and therapy. Defendants' representations were knowingly and actually false.

60. Because all Defendants acted in concert, they are all liable for the misrepresentations alleged herein.

61. SM and her parents relied on these representations to their detriment; SM was emotionally and physically harmed at Island View and her parents did not receive the quality care, services, and facilities, destined for SM.

62. Upon information and belief, the Defendants knew when they made these representations that they were false or at least misleading, and were made to induce Dr. Phil to place and maintain SM at Island View in order to secure the monthly fees from and the publicity for the Dr. Phil organization.

63. Upon information and belief, the Defendants were aware that the facilities were not safe; the children were being harmed emotionally, physically, medically, and educationally, by unqualified and masochistic staff.

64. Upon information and belief, the Defendants were aware that the harm caused to children at these facilities, including SM, was so grave that the Utah Department of Human Services should have stepped in and shut down Island View, but it did not.

## CLAIM SIX

### (Thirteenth Amendment)

65. Defendants violated SM's civil rights protected by the Thirteenth Amendment to the United States Constitution in the following respects:

21

(Thirteenth Amendment – **Slavery**)

a. holding SM a physical and psychological captive to the Defendants' demands and compelling her to serve Defendants' interests in gaining notoriety, advertising revenues, audience approval, and approval from SM's desperate and deluded parents;

b. keeping SM, by physical means and other coercion with no means to escape and no choice or viable alternative except to perform services for the Defendants;

c. Keeping SM separated from her home and family;

d. Depriving SM of her ability to engage in or determine her own course of action or way of life;

e. Exploiting SM's vulnerability for the purpose of breaking down her free will, and causing her to become a compliant and mindless slave of Island View Academy's demented behavior modification program that has no stated goal or treatment plan as to SM;

f. Intentionally subjugating SM's will, desires, innate

drives and natural instincts to Defendants' will and

whims;

g.  Keeping SM continually and constantly confined in

unnatural, stressful, and torturous circumstances;

h.  Forcing SM to subject herself wholly and completely to

Defendants' control, and mental, emotional, and

physical demands so as to make her lose her individual

identity and will.

(Thirteenth Amendment: **Involuntary Servitude**)

66. Section One of the Thirteenth Amendment also abolishes "involuntary

servitude", a term with a broader meaning than slavery, abolishing

any state of bondage in this country, of whatever name or form.

While the outer limits of the common law prohibition against

"involuntary servitude" are not currently established, at a

minimum, and as used in this case, it involves the rights to one's

own life and liberty, to labor for one's own benefit, and to be free

23

from physical subjugation or coercion by another.

67.   Conspiracy: defendants, and each of them conspired to deprive SM

of her constitutional rights by imposing upon her without any

grounds whatsoever and without the least investigation of her

individual needs, educationally, psychologically, socially or

medically, and the matching of those needs, if any, to a

comprehensive treatment plan individually suited to each of them,

with some assessment as to the length of treatment, the capability

of the particular institution best equipped to provide such

treatment, the expected length of such treatment; the specific goals

of such treatment; and the specific manner and methodology of

meeting the treatment goals.  It is obvious that locking SM up

without an assessment in which she and her parents would

participate, and putting her in the full and complete custody of

captors of no particular merit and throwing her in with other

persons whose ages, conditions, experience, problems, and

24

influence upon SM were unknown or of no interest, was on its face, damaging.

68.   As a proximate result of the acts and conduct of the defendants, the plaintiff SM has been and is being damaged in the privileges and immunities of national and state citizenship, and is suffering grievous mental and emotional distress.

WHEREFORE, Plaintiffs pray for judgment as follows:

     a. Special damages according to proof.

     b. General damages according to proof.

     c. Punitive damages according to proof.

     d.  The costs of suit.

     e. Such other relief as is warranted.

Dated:  January 13, 2014

_____

Thomas M. Burton