IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| TERRI AND DAVID MYERS, individuals for and on behalf of themselves and as guardians ad litem for SM, a minor,<br><br>      Plaintiffs,<br> vs.<br><br>DR. PHIL ORGANIZATION; BAIN CAPITAL; CRC HEALTH GROUP; ASPEN EDUCATION GROUP; ISLAND VIEW ACADEMY; RYAN MORTENSON, and DOES 1 through X,<br><br>      Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 1:14-CV-007-TC |

The court must determine whether the Plaintiffs Terri and David Myers should be granted leave to file an amended complaint to cure deficiencies previously identified by the court.

On September 30, 2014, the court dismissed the complaint of Plaintiffs Terri and David Myers, who instituted this suit as individuals and guardians ad litem for their minor daughter, SM. (See Doc. Nos. 64-66.) Finding that the Meyers' complaint failed to state a claim under Rule 12(b)(6), the court dismissed Counts 1, 2, and 3 against the parties with prejudice, but Counts 4 and 5 (fraud and conspiracy) were dismissed without prejudice. (Id.) With permission of the court, the Myers filed two motions for leave to file a first amended complaint in an attempt to correct the pleading problems identified by the court. (See Doc. Nos. 69-70.)

Rather than filing one proposed amended complaint, as is the norm, the Myers have filed

two separate proposed complaints.  The first one, against Defendant Bain Capital,[1] alleges Negligent Representation.  The second one names Defendants "Dr. Phil Organization,"[2] Phillip McGraw, PhD, CBS Television Distribution, and the Dr. Phil Foundation (collectively, the "Dr. Phil Defendants").  Against the Dr. Phil Defendants, the Myers allege "Conspiracy and Fraudulent Concealment" and "Actual and Constructive Fraud."  The court will view the two complaints as one for purpose of analysis.

**Nature of the Allegations**

The allegations (taken from the proposed amended complaints in combination) arise out of the psychological and behavioral problems of the Myers' minor daughter (SM), her subsequent appearance on the Dr. Phil Show, the Show's referral of SM to a treatment center called Island View Academy, the Show's (or Dr. Phil McGraw's) payment for SM's treatment at Island View, and SM's subsequent physical and psychological injuries at Island View.  According to the Myers, Island View Academy represented itself as a "therapeutic residential treatment center" when "in reality it was a private prison that locked up SM along with other minors, for the purpose of forcing her to become obedient by depriving her of freedom, privacy, education, and subjecting her to involuntary servitude, and unjust unusual punishments.

---

[1]Plaintiffs refer to one of the Defendants as "Bain Capital."  According to that Defendant, Bain Capital "is not a legal entity, but a reference to a group of affiliated management entities and investment funds, each having a separate corporate personality."  (Bain Capital Opp'n (Doc. No. 74) at 1 n.1.)  For purpose of analysis, the court treats Bain Capital as a single corporate entity, but that does not change the court's conclusion that Plaintiffs have not proposed allegations that state a viable claim.  Accordingly, regardless of which entity within Bain Capital is being sued, the Plaintiffs' request to file their proposed amendment would be futile, as explained in this order.

[2]Apparently there is no such entity called "Dr. Phil Organization."

(Proposed First Am. Compl. (Doc. No. 69-1) ¶ 7.)  They allege that "Dr. Phil gave her the gift of forced attendance at Island View Academy."  (Id.)  The Plaintiffs group the Dr. Phil Defendants together, alleging that "all [individual Dr. Phil Defendants] were acting as agents of, or joint venturers with, the other [Dr. Phil Defendants]."  (Doc. No. 69-1 ¶ 5.)[3]

They allege that Dr. Phil, "[b]eing primarily interested in his show's ratings, . . . concealed from the Myers family his having little personal interest in their daughter's plight." (Doc. 69-1 ¶ 10.)  They also contend that all of the Dr. Phil Defendants conspired with each other to hide the problems with Island View Academy and induce the Myers to send SM to the Academy despite knowing the dangers (or, in the alternative, by recklessly failing to research the legitimacy of) the facility, all for financial gain, notoriety, and ratings.  Compare, e.g., Proposed First Am. Compl. (Doc. No. 69-1) ¶ 17 ("Dr. Phil fraudulently concealed from plaintiffs the fact that Island View" was an unsafe place) with ¶ 18 ("It is possible that Dr. Phil was not aware of the checkered history of Island View Academy and the many survivor web sites exposing its cruel behavior" and intentionally failed to investigate).  At some point in the proposed complaint, the Plaintiffs make no distinction between managers of Island View Academy and the Dr. Phil Defendants.  For example, they allege that "Defendants jointly concealed and failed aggressively to address abuse issues by such actions as failing to promulgate proper and effective policies for the appointment and training of teachers, supervisors, and staff."  (Id. ¶ 24 (emphasis added).)

---

[3]Last fall, the court dismissed Island View Academy on the basis that the court lacked subject matter jurisdiction under the Utah Healthcare Malpractice Act.  (See Sept. 30, 2014 Order & Mem. Decision (Doc. No. 66).)  The Plaintiffs continue to pursue claims against other entities allegedly associated with Island View Academy or that allegedly referred the Myers to Island View Academy for financial gain knowing that Island View Academy was not a safe place.

As for alleged material misrepresentations, most are limited to what Defendant Dr. Phillip McGraw purportedly said (or concealed), although the Plaintiffs do refer to the Dr. Phil Defendants generally as a group in their allegations of misrepresentations. (See, e.g., id. ¶¶ 28(a) to 28(f), 34, 36.) And they allege generally that all of the Dr. Phil Defendants had a duty to disclose certain conditions to the Myers. (See id. ¶ 30.)

As for Defendant Bain Capital, Plaintiffs allege that Bain is "an asset management and financial services company,"[4] that owns former Defendants Aspen Education Group[5] and CRC Health Group, both of which in turn own former Defendant Island View Academy.[6] According to the Plaintiffs, "Bain Capital is corporately separate from the health care entities below it," but still "has a social responsibility" to step into the shoes of former Defendants whom the court dismissed on jurisdiction grounds in an earlier order[7] (that is, Island View's "ascending owners" CRC Health Group, and Aspen Education Group). They insist that Bain Capital, "as the equitable owner of the health care providers below it on the corporate ladder must police and prevent what has happened in this case." (Proposed First Am. Compl. Against Bain Capital (Doc. 70-1) at 3.) They also allege that Bain "owned and, through its investment companies, managed and operated Island View Academy." (Id. ¶ 8 (emphasis added).) No specific action by

---

[4]Doc. No. 70-1 ¶ 3.

[5]According to the Plaintiffs, Bain acquired Aspen Education Group for $300 million "because in 2005, the *New York Times* reported that analysts estimated that companies like Aspen had profits between 10 and 20 percent of their revenues." (Id. ¶ 5.)

[6]Although it is not clear from the allegations in the proposed complaint, the court assumes for purposes of its analysis that Bain does own CRC Health Group and that CRC, along with Aspen Education Group, owns Island View Academy.

[7]See Sept. 30, 2014 Order (Doc. No. 66).

Bain, a separate corporate entity, is alleged.  Its alleged liability is based solely on its role as owner of other entities.  Plaintiffs say that "Bain has <u>allowed its invested [sic] companies</u> to persistently and negligently misrepresent to prospective parents and their youth the manner and purpose of Island View Academy."  (<u>Id.</u> ¶ 13 (emphasis added).)  At best, the Plaintiffs make general allegations that lump all of the entities together, claiming that "they" have taken specific actions.

Plaintiffs also contend that "[b]ecause SM was sent [to Island View Academy] by Dr. Phil under false pretenses, . . . the Bain Capital is liable to the Plaintiffs for the damages caused . . . ."  (<u>Id.</u> ¶ 20.)  Yet no connection between "Dr. Phil" and Bain Capital is alleged.

**Applicable Legal Standards**

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  But the court may deny a request to amend a complaint if, for instance, the proposed amended complaint does not correct pleading deficiencies previously identified by the court or the allegations are so insufficient that allowing the proposed amendment would be futile.  <u>Anderson v. Suiters</u>, 499 F.3d 1228, 1238 (10th Cir. 2007).  A proposed amendment is futile if it would be dismissed for failure to state a claim under Rule 12(b)(6) or for failure to sufficiently plead a fraud claim under Rule 9(b).  <u>Id.</u>; <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d 1246, 1252 (10th Cir. 1997) (stating that a fraud complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof" in order to avoid dismissal under Rule 9(b)) (internal quotation marks and citation omitted).

Because all of the Myers' claims against the Dr. Phil Defendants are based on allegations

of fraud, they must satisfy the Rule 9(b) requirement that claims be pleaded with particularity. And because the Plaintiffs seek to bring a negligent misrepresentation claim against Bain, which is a form of fraud, they must also satisfy the heightened pleading requirements of Rule 9(b). See Atkinson v. IHC Hosps. Inc., 798 P.2d 733, 737 (Utah 1990) (defining negligent misrepresentation as a form of fraud).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). But "mere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient" to satisfy the requirements of Rule 9(b). Armed Forces Ins. Exch. v. Harrison, 70 P.3d 35, 40 (Utah 2003) (internal citations and quotation marks omitted).

**Negligent Misrepresentation Claim**

Plaintiffs seek permission to bring a negligent misrepresentation claim against Bain Capital. The court has reviewed the proposed amended complaint and finds that they have not cured the deficiencies in their previous complaint. First, they have not alleged anything that would allow the court to "pierce the corporate veil" between Bain Capital and Island View Academy. Second, they have not alleged facts that would establish a case of negligent misrepresentation.

The Alter Ego Doctrine or Piercing The Corporate Veil

Plaintiffs do not alleged any facts directly connecting SM's injury to Bain Capital. Rather, they appear to be going up the corporate chain on the assumption that the owner of corporate subsidiaries bears responsibility for protecting the interests of SM from Island View

Academy, which they contend lies at the bottom of that corporate chain. The proposed amended complaint does not contain any facts sufficient to pierce the corporate veil of any entity allegedly connected to the harm of SM. In other words, nothing in the proposed complaint would lead the court to stray from the well-settled legal proposition that a corporation is not liable for the acts of its subsidiary unless the plaintiff shows that the holding corporation is the alter ego of the corporation alleged to have done wrong. See, e.g., Jones & Trevor Mktg., Inc. v. Lowry, 284 P.3d 630, 635 (Utah 2012) ("The alter ego doctrine is an exception to the general rule that limits stockholders' liability for obligations of the corporation.").

To avoid dismissal of their claim against Bain Capital, Plaintiffs would have to pierce at least two[8] corporate veils: the one between Island View Academy and Aspen Education Group, and the one between Aspen and Bain Capital. But nothing in the proposed amended complaint leads the court to conclude that there has been any intermingling of the three entities. When determining whether to pierce a corporate veil, court must consider whether there was

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

Id. at 636 (quoting Colman v. Colman, 743 P.2d 782, 786 (Utah Ct. App. 1987).) The proposed

---

[8]In Bain's argument about lack of personal jurisdiction, it contends that there are "several intermediate corporate layers" between Bain Capital and Island View Academy. (Bain Capital's Opp'n Mem. (Doc. No. 74) at 6.) It also notes that Plaintiffs claim that "Bain Capital allegedly participated in the management of Island View *indirectly*, 'through its investment companies,'" but that "[n]o specifics of this indirect management relationship are provided: the 'investment companies' are not named, their relationship to Bain Capital is not explained, and their connection to Utah is not alleged." (Id.)

complaint contains no facts addressing those factors. The general allegations that Bain Capital owns Aspen Education Group and "through its [unnamed] investment companies, managed and operated Island View" are insufficient to pierce the corporate veil. (See First Am. Compl. against Bain Capital (Doc. No. 70-1) ¶¶ 5, 8.) Nothing in the alleged facts would permit the court to hold Bain liable for the alleged actions of Island View Academy.

Elements of Negligent Misrepresentation Claim

Even if the Plaintiffs could pierce the corporate veil, or if they are not raising a veil piercing argument but rather are alleging breach of a direct duty by Bain, they have not stated a claim for negligent misrepresentation. To state such a claim, a party must allege facts that would establish the following:

> "Where one . . . carelessly or negligently makes a false representation . . . , expecting the other party to rely and act thereon, and the other party reasonably does so and suffers loss in that transaction, the representor can be held responsible if the other elements of fraud are also present."

Smith v. Frandsen, 94 P.3d 919, 922-23 (Utah 2004) (quoting Jardine v. Brunswick Corp., 423 P.2d 659, 662 (1967)). To prevail on a negligent misrepresentation claim, the Plaintiffs "must demonstrate the existence of a duty running between" them and Bain Capital. Id. at 922. At least two elements are missing from Plaintiffs' proposed complaint: a duty and misrepresentations by Bain.

First, Plaintiffs do not allege any facts that would create a duty on the part of Bain to the Myers. Second, the Plaintiffs do not allege any representations made by Bain Capital to the Myers, or that the Myers relied on anything Bain Capital allegedly misrepresented. Instead, the proposed complaint focuses on alleged misrepresentations by Bain Capital's Co-Defendants Dr.

Phil Organization, Dr. Phillip McGraw, CBS Television Distribution, and the Dr. Phil Foundation. Nothing in the allegations links those defendants to Bain Capital. In short, there is no allegation that Bain Capital had any involvement in, or even knowledge of, the encounter that resulted in SM's injury.

The court, in its September 30, 2014 Order, dismissed Plaintiffs' complaint against Bain Capital under Rule 12(b)(6) for failure to state a claim. The Plaintiffs were given a chance to correct those deficiencies when the court dismissed two of the claims without prejudice. But the Plaintiffs' proposed amended complaint does not satisfy the pleading requirements of Rule 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"), much less the heightened pleading requirements of Rule 9(b). Having failed in their attempt to correct the deficiencies noted by the court, allowing them to file the proposed amended complaint would be futile. Accordingly, the motion to amend is DENIED and all claims against Bain Capital are dismissed with prejudice.

**Fraud and Conspiracy Claims**

The Myers allege two claims against the Dr. Phil Defendants: "Conspiracy and Fraudulent Concealment" and "Actual and Constructive Fraud." Under both of those causes of actions, the Plaintiffs must satisfy the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b). A fraud complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof" in order to avoid dismissal under Rule 9(b). Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotation marks and citation omitted).

This is the Myers' second attempt to state claims against the Dr. Phil Defendants. In

September 2014, the court dismissed all but two claims against the Dr. Phil Defendants and gave the Plaintiffs the opportunity to amend their complaint to address the deficiencies identified by the court. (See Doc. Nos. 64-65; Tr. of Sept. 23, 2014 Hr'g (Doc. No. 67).) The court finds that the Myers have not cured the deficiencies in their previous complaint. There are many problems with Plaintiffs' proposed amended complaint, but the court will highlight only a few.

First, the Myers' proposed amended complaint does not contain a significant number of new (much less game-changing) allegations. As the Dr. Phil Defendants note in their opposition brief, a comparison of the language in the original complaint and the proposed complaint shows immaterial changes or repetitious additions. (See Doc. No. 72 at 8-13 (containing table showing differences between the two).)

Second, the Myers make no distinction, in any material way, between Dr. Phillip McGraw, CBS Television Distribution, and the Dr. Phil Foundation.[9] For the most part, they simply refer to the group as one.[10] That is not sufficient to plead fraud. Rule 9(b) and related case law require a specific delineation between defendants so that the complaint clearly notes who said what to whom and when. In fact, the Plaintiffs do not mention CBS Television Distribution or the Dr. Phil Foundation in the proposed complaint other than in the caption and in Paragraph 1, which simply defines the three defendants as "Dr. Phil."

Third, the allegations of whether "Dr. Phil" knew about the alleged problems at Island

---

[9] They also refer to "the Dr. Phil Organization" without defining it. Perhaps it includes the three proposed defendants, but that is not clear. Moreover, counsel for the Dr. Phil Foundation contend that there is no such entity.

[10] At one point in the proposed complaint, Plaintiffs assert in conclusory fashion that "all defendants were acting as agents of, or joint venturers with, the other defendants." (Proposed Am. Compl. (Doc. No. 69-1) ¶ 5.)

View Academy are inconsistent and full of equivocation.  For example:

- "Dr. Phil . . . <u>knew or should have known</u>" that sending [SM] to Island View Academy would exacerbate her problems. (<u>Id.</u> ¶ 11 (emphasis added).)

- "Dr. Phil <u>fraudulently concealed</u> from plaintiffs the fact that Island View engaged in a pattern and practice of forced obedience to mindless rules . . . ." (<u>Id.</u> ¶ 17 (emphasis added).)

- "<u>It is possible that Dr. Phil was not aware</u> of the checkered history of Island View Academy and the many survivor web sites exposing its cruel behavior.  <u>If he knew</u> of such, he then suppressed and minimized his knowledge of the rampant [abuse]" at the Academy. (<u>Id.</u> ¶18 (emphasis added).)

- "<u>Either he did not investigate</u> the tactics of Island View <u>or else he joined and conspired with Island View to conceal</u> that Island View and its staff and employees fraudulently . . . engaged in [a] concerted action to commit such wrongful acts." (<u>Id.</u> ¶ 19 (emphasis added).)

- "There is no justification for a vast Dr. Phil organization and staff <u>not probing into</u> Island View before publically endorsing it by sending SM there at his [sic] expense." (<u>Id.</u> ¶ 21 (emphasis added).)

- "As a part of their <u>conspiracy to conceal</u> the physical, mental, emotional, and sexual abuse of children by the offending teachers, supervisors, and staff, Defendants jointly followed a practice of refusing to stamp out suspected abuse <u>despite actual notice and knowledge of the risk</u>." (<u>Id.</u> ¶ 23 (emphasis added).)

- "[Dr. Phil] <u>concealed that he knew nothing</u> about Island View and its lack of qualified personnel . . ., <u>or if he had any such knowledge</u>, he did not disclose . . . ." (<u>Id.</u> ¶ 29 (emphasis added).)

- "[A]ll Defendants acted in concert, and adopted the Island View Academy propaganda <u>without investigating it</u> . . . ." (<u>Id.</u> ¶ 34 (emphasis added).)

- "<u>Upon information and belief</u>, the Dr. Phil Defendants <u>were, or should have been aware</u> that the facilities were not safe . . . ." (<u>Id.</u> ¶ 37 (emphasis added).)

A claim of fraud requires proof (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base a

11

representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it and (8) was thereby induced to act (9) to that party's injury and damage.  Shah v. Intermountain Healthcare, Inc., 314 P.3d 1079, 1085 (Utah Ct. App. 2013).  The list of "representations of material fact" (found in paragraphs 28(a)-(f) of the proposed amended complaint) are problematic because (a) they are not attributed to any particular person, (b) they are not material, and/or (c) they are not representations.  For example, whether or not Dr. Phil McGraw visited with the Plaintiffs before the show was taped (as he had allegedly promised) is not material to the claims.  That Mr. Myers may have been "forced" to sit in the audience rather than on stage is not a representation, must less a material one.

       Fourth, the allegations do not establish any duty owed by any of the Defendants to the Plaintiffs.  And duty is an essential element of a tort claim of fraud.  "Fraudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or otherwise act to conceal material facts known to him."  Jensen v. IHC Hosps., Inc., 944 P.2d 327, 333 (Utah 1997).  Even assuming a television personality is a legitimate psychologist, no allegation demonstrates the existence of a doctor/patient relationship which might give rise to a duty.  The fact that the Plaintiffs state that they appeared on the television show and were referred to a treatment center does not amount to medical treatment by Dr. Phil McGraw (and certainly not by the other Defendants).  Moreover, the Plaintiffs admit that Island View Academy is licensed by the state.  There are no allegations that more information than that was required.

       As the Dr. Phil Defendants point out,

> [t[he crux of Plaintiffs' argument appears to be that the "vast Dr. Phil

>organization" is somehow obligated to ferret out evidence of unspecified instances of "physical, emotional, mental, and sexual abuse" at Island View so that "public authorities, the media, and others would have issued general and specific warnings to the parents of children enrolled at Island View[.] . . . Plaintiffs do not address how a television talk show, no matter how well staffed, is either in a position or bears a legal obligation to perform the type of investigation typically left to the appropriate regulatory bodies, those created by the state to regulate and license psychologists, counselors, teachers, and to credential therapeutic residential treatment centers such as Island View in Utah.

(Dr. Phil Defs.' Opp'n Mem. (Doc. No. 72) at 16-17 (quoting Plaintiffs' Proposed First Am. Compl. (Doc. No. 69-1).)  That is a dispositive flaw in the Plaintiffs' proposed complaint.

Fifth, the Plaintiffs' conspiracy allegations are not sufficient.  "[C]onspiracy to defraud requires proof of the underlying fraud." Gildea v. Guardian Title Co. of Utah, 970 P.2d 1265, 1271 (Utah 1998).  As noted above, Plaintiffs fail in their attempt to allege fraud.

Considering all of the allegations in the proposed amended complaint, and making all reasonable inferences in favor of the Myers, the court finds that their allegations do not state claims for conspiracy or fraud against any of the Dr. Phil Defendants.

**Asserted Discovery Needs**

The Myers contend that the information they need to fully state a claim is exclusively in the hands of the Defendants.  In their Reply supporting their motion to amend the complaint again the Dr. Phil Defendants, they state that they need only make "short plain statements" to avoid dismissal because the Defendants

>are in possession of all the facts about the relationship between Dr. Phil and Island View.  Plaintiffs are the ones needing discovery . . . .  Once the pleadings are set, Plaintiffs will conduct discovery to determine the details of the connection between the Dr. Phil Organization and Island View Academy; the financial consideration supporting it, the communications between the two, any previous involvement between the two, the respective responsibilities of the two, and the party liable for accident [sic] and mistreatment of [SM].

(Reply (Doc. No. 75) at 4-5.)  But their "short plain statements" are too conclusory, and allowing the amendment would sanction a fishing expedition.  A party alleging fraud may not avoid dismissal by asserting that the information is in the hands of the defendant.  "[A] plaintiff alleging fraud must know what his claim is when he files it." Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 990 (10th Cir. 1992),[11] quoted in Shah v. Intermountain Healthcare, Inc., 314 P.2d 1079, 1085 (Utah Ct. App. 2013).  "'[A] complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one.'" Shah, 314 P.2d at 1085 (internal citation and quotation marks omitted). Plaintiffs may not rely on the need for discovery to avoid their Rule 9(b) pleading obligations.

**ORDER**

For the foregoing reasons, the Plaintiffs' Motion to File First Amended Complaint for Conspiracy and Fraudulent Concealment, and Actual and Constructive Fraud (Doc. No. 69) and Motion to File First Amended Complaint for Negligent Misrepresentation (Doc. No. 70), are DENIED.  The Clerk of the Court is directed to close the case.

SO ORDERED this 5th day of February, 2015.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge

---

[11] This case was overruled on other grounds by Central Bank v. First Interstate Bank, 511 U.S. 164 (1994).